LOUISE P. OWEN vs. MOSES NEVEAU & another.

Franklin. Sept. 17. — Oct. 19, 1878. ENDICOTT & SOULE, JJ., absent.
February 25, 1879. — March 22, 1880.

An officer's return on a sale of the right of a debtor of redeeming mortgaged land, which sets forth that he sent a notice of the time and place of sale, by mail, to the debtor, directed to a certain town in another county, as "I could not find the debtor in my precinct," is a sufficient return that the debtor was not "found within his precinct," within the Gen. Sts. c. 103, § 41.

Section 16 of the Gen. Sts. c. 103, applies only to a levy on land by extent, and not to a levy, under §§ 39 and 40, on land subject to a mortgage.

The provision in the Gen. Sts. c. 103, § 40, that the deed of an officer, of the right of a debtor to redeem mortgaged land, sold on execution, being recorded "within three months after the sale, shall give to the purchaser all the debtor's right of redemption," is intended for the protection of bona fide purchasers and attaching creditors, and it is not a prerequisite to the vesting of the title in the purchaser that the deed should be recorded within that time.

Although, under the Gen. Sts. c. 123, § 55, a general attachment of real estate, which has been fraudulently conveyed by a debtor to a third person, is not valid against a creditor making a subsequent special attachment, yet, where the land is sold on an execution obtained by the creditor making the general attachment, and the proceeds are applied first in satisfaction of his judgment, and then in satisfaction of the judgment obtained by the creditor making the special attachment, with his consent, and both judgments are fully satisfied, the statute is no defence to a writ of entry brought by the purchaser at such sale to recover possession of the land.

WRIT OF ENTRY, dated February 18, 1876, against Moses Neveau and Phebe L. Neveau, to recover a parcel of land in Montague. Plea, nul disseisin. Trial in the Superior Court before Putnam, J., who reported the case for the determination of this court, in substance as follows:

On May 16, 1874, Moses Neveau, who was the owner of the land in question, subject to a mortgage made by him, conveyed the land to Charles Moran, who, on the same day, conveyed it to Phebe L. Neveau, wife of Moses. There was evidence tending to show that these conveyances were fraudulent as to the creditors of Moses.

On September 28, 1874, Euclid Owen and others, members of the firm of Owen & Co., creditors of Moses, brought an action of contract against him, and made a general attachment of his real estate. They obtained judgment and execution against him, and on April 17, 1875, the right in equity, which Moses had on September 28, 1874, of redeeming the land from the

mortgage above referred to, was taken on the execution, and on May 31, 1875, sold by public auction to the demandant, to whom a deed of the equity of redemption was on the same day delivered. This deed was recorded on February 16, 1876; but no other conveyance of the premises was made between the date of the attachment and the date of the record.

The officer's return on the execution set forth that he gave notice to Moses of the time and place of the sale, "by mail, duly directed to the said Moses Neveau at North Adams, Mass., postage prepaid, as I could not find the said Moses in my precinct, he being resident at North Adams in our county of Berkshire."

Moses and his wife were in possession of the premises in question (the wife holding the record title to the same) at the date of the levy and sale, and continued so to be, up to the time of the date of the writ in this case. No evidence other than the officer's return and deed was offered to show any momentary seisin and possession of the premises by the demandant.

The tenants contended that the demandant was not entitled to recover for the following reasons: " 1. Because the officer's return does not show that the notice in writing required by the Gen. Sts. c. 103, § 41, to be given to the debtor, was properly given. 2. Because there is no evidence that the officer gave to the creditor or his attorney, or the purchaser, the momentary seisin and possession required by the Gen. Sts. c. 103, § 16. 3. Because the deed to the demandant was not recorded within three months after the sale, as required by the Gen. Sts. c. 103, § 40."

The judge sustained these objections; and ordered a verdict for the tenants. If the ruling was correct, judgment was to be entered upon the verdict; otherwise, a new trial was to be ordered.

*D. Aiken & G. L. Barton*, for the demandant.

*S. O. Lamb*, for the tenants.

MORTON, J. None of the tenants' objections to the demandant's title can be sustained.

1. Section 41 of the Gen. Sts. c. 103, provides that "the officer shall give notice in writing of the time and place of sale to the debtor, if found within his precinct." The officer's return is a sufficient return that the debtor was not to be found within

his precinct, and shows an excuse for not giving him the personal notice required by the statute if he is found within the precinct. The language, " I could not find the said Moses in my precinct," imports that the officer made diligent search for the debtor. The statement of the additional fact that the officer sent to the debtor a notice by mail, if unnecessary, does not vitiate the return.

2. The plain answer to the second objection is, that § 16 of the Gen. Sts. *c.* 103, applies only to a case of a levy upon land by extent. In this case the officer proceeded under §§ 39 and 40, and sold the right of redeeming the land, which was subject to a mortgage.

3. In regard to the third objection, the report shows that the deed was recorded before this suit was commenced, and that there was no conveyance of the premises between the date of the sheriff's deed to the demandant and the time it was recorded. The provision of the General Statutes upon which the tenants rely is a reënactment, without change, of the Rev. Sts. *c.* 73, ,§ 38. In *Houghton* v. *Bartholomew*, 10 Met. 138, decided under the Revised Statutes, it was held that the recording of the deed within three months was not a prerequisite to the vesting of the title in the purchaser; that the provision was intended for the protection of *bona fide* purchasers or attaching creditors, and that such deed, though not recorded within three months, gave the purchaser all the right and title of the execution debtor in the premises, even as against a subsequent purchaser or attaching creditor who had actual knowledge of the sale and conveyance by the officer. This is decisive against the ground taken by the tenants in the case at bar. *New trial ordered.*

The case was then tried before *Pitman,* J., who allowed a bill of exceptions, which stated, in addition to the facts already set forth, the following :

After the general attachment by Owen & Co., three other creditors of Moses brought actions against him, and made special attachments of the land in question. Judgments were recovered in all the actions at the same term of court, and executions issued and delivered to the officer, who, after the sale on the execution of Owen & Co., from the proceeds of the sale first satisfied their

execution, and then the executions in the other actions, in the order of the attachments therein. Each creditor signed a receipt for the amount of his execution, which receipt was written under the return of the officer on each execution. None of the special attachments had been waived or discharged before the seizure on the execution of Owen & Co.

The tenants contended and asked the judge to rule that the general attachment by Owen & Co. was invalid as against the subsequent special attachments; that the proceedings of the officer in the seizure and sale were irregular; and that the demandant acquired no title thereby. The judge declined so to rule, and ruled that this objection was not open to the tenants. The jury returned a verdict for the demandant; and the tenants alleged exceptions.

*Lamb*, for the tenants.

*Barton*, for the demandant.

Colt, J. The statute provides that an attachment of real estate, which has been fraudulently conveyed by the debtor to a third person, shall not be valid against a subsequent attaching creditor, or against a person who afterwards purchases the estate for a valuable consideration and in good faith, unless the officer, in addition to his general return, also returns a brief description of the estate attached and the name or names of the person or persons in whom the record or legal title stands. Gen. Sts. c. 123, § 55. It is clear, therefore, that the attachment in favor of Owen & Co., though it was first in order of time, was not valid as against the attachments of the three other attaching creditors, who made special attachments in compliance with the statute above referred to. By the effect of the statute, Owen & Co., as between themselves and the other creditors named, became the fourth attaching creditors in point of right, and the only lien created by their attachment was a lien upon the debtor's equity of redemption, subject to the three prior attachments. All four of the suits proceeded to judgments, and executions were duly issued and placed in the hands of the same officer for service. He proceeded to levy the execution in favor of Owen & Co., by selling all the right of redeeming the premises in suit which Moses Neveau had on September 28, 1874, the day when the same was attached on mesne process. He levied the other

three executions upon the balance of the proceeds of the sale, treating them as being subsequent in right to the attachment and execution in favor of Owen & Co.

The tenants contend that this sale was prejudicial to the rights of the judgment debtor, and illegal, because the officer attempted to sell the right to redeem which the debtor had on a previous day, while the same was subject to subsequent special attachments; and that no one would bid the actual value of the interest sold, as the purchaser would be liable to have his title defeated by the special attachments.

It does not appear that any wrong was intended in these proceedings, or that there was any fraud on the part of the judgment creditor or the officer, or that the debtor suffered any actual loss. And we are of opinion that the sale was valid as against the tenants. It is true that the statute makes provisions for the case of a subsequent attaching creditor who obtains judgment while prior attachments are pending. He may commence his levy by a seizure, and suspend the further service until the prior attachment is dissolved. If it is dissolved, the estate remains bound by such seizure. If it is set off and sold under the prior attachment, the surplus is applied upon the execution of the subsequent attaching creditor. Gen. Sts. *c.* 133, §§ 41, 50, 51; *c.* 103, § 39. *Capen* v. *Doty*, 13 Allen, 262. But the judgment creditor is not absolutely required to suspend the levy to await a prior attachment; he may take the risk of going on in the belief that it will never be perfected by a judgment or levy of execution. If the attachment is perfected, the title acquired by the previous sale will be wholly defeated, but not otherwise.

It was decided in *Pease* v. *Bancroft*, 5 Met. 90, that a purchaser took nothing under a sale by the second attaching creditor as against the prior attaching creditor; and that, when the sale was made in pursuance of the first attachment, the sale under the second was rendered wholly void. It was not necessary in that case to declare that the sale on the second attachment, pending the first, would not have been good against the debtor, if the first attaching creditor had not obtained judgment, and upon that question the court expressly declined to give an opinion, although it was suggested that, "if it would have been good, it would seem to be injurious to the debtor, by causing

his property to be sold at a reduced value." The suggestion is not of controlling weight upon the question before us; and we are not prepared to say that a sale on execution of an equity of redemption is invalid as to the judgment debtor, (who has by the Gen. Sts. c. 103, § 44, the right within a year to redeem the land from whomever may become the purchaser,) if it appears that at the time of the sale there were attachments which under the Gen. Sts. c. 123, § 55, were entitled to priority, but which were never afterwards perfected by a levy.

There is another ground upon which the validity of this sale may be upheld. A prior attaching creditor may, at any time before the completion of the levy, waive or abandon his priority without consulting the debtor. It is a matter of security only, the disposal of which is wholly in his own hands. If he abandons or waives his right, the attachment is dissolved, and there is nothing to prevent a levy by the next attaching creditor. He may, by previous authority or by subsequent ratification, make the officer in whose hands he places the execution for service his agent to do this, either after or before a levy has been made.

In this case, all the executions were in the hands of the officer at the time of the sale, and they were all returned satisfied out of the avails of the sale on the execution of Owen & Co. The creditor's receipt for the amount of each execution was written under the officer's return reciting the sale in each case. There is nothing to control the presumption that the officer proceeded with the approval of all the creditors. The priority of the special attaching creditors was therefore lost by their own act, and there is no ground for the tenants' objection to the validity of this sale.                    *Exceptions overruled.*